1
2
3
4                    UNITED STATES DISTRICT COURT
5                  NORTHERN DISTRICT OF CALIFORNIA
6
7    DAVID CAVAGNA, et al.,                Case No.  23-cv-01686-KAW
8                    Plaintiffs,
                                           **ORDER GRANTING MOTIONS TO
9           v.                             DISMISS AND MOTION FOR
                                           JUDGMENT ON THE PLEADINGS**
10   CLEARLAKE POLICE DEPARTMENT, et
     al.,                                  Re: Dkt. Nos. 9, 17, 25, 33
11
                    Defendants.
12

13          On April 7, 2023, Plaintiffs David and Kimberly Cavagna brought the instant lawsuit

14   against Defendants Clearlake Police Department, Officer Brittany Shores, City of Clearlake, Lake

15   County, Lake County Behavioral Health, California Highway Patrol ("CHP"), and Officer Joel

16   Skeen, alleging that Defendants failed to protect the death of Plaintiffs' son.  (Compl. ¶ 1, Dkt.

17   No. 1.)  Pending before the Court are: (1) Defendant CHP's motion to dismiss for lack of

18   jurisdiction, (2) Defendant City of Clearlake and Shores's motion to dismiss, (3) Defendant

19   Skeen's motion to dismiss, and (4) Defendant Lake County and Lake County Behavioral Health's

20   motion for judgment on the pleadings.  (CHP Mot. to Dismiss, Dkt. No. 9; Clearlake Mot. to

21   Dismiss, Dkt. No. 17; Skeen Mot. to Dismiss, Dkt. No. 25; Lake Mot. for Judgment, Dkt. No. 33.)

22          Having considered the parties' filings, the relevant legal authorities, and the arguments

23   made at the October 19, 2023 hearing, the Court GRANTS the motions to dismiss and for

24   judgment on the pleadings.

25                        I.      BACKGROUND

26          This case concerns the death of Jesse Cavagna ("Decedent"), who suffered from

27   schizophrenia.  (Compl. ¶¶ 1, 4.)  On September 15, 2022, Plaintiff Kimberly learned that

28   Decedent had left the trailer he lived in and had not been home in several days.  (Compl. ¶ 15.)

*United States District Court*
*Northern District of California*

1    She called Defendant Clearlake Police Department and verbally filed a missing person report.

2    (Compl. ¶ 15.) The following day, Defendant Shores met Plaintiff Kimberly at Decedent's

3    residence, and Plaintiff Kimberly explained that Decedent was mentally disabled. (Compl. ¶ 16.)

4    Plaintiff Kimberly also mentioned the possibility that Decedent could be visiting other RV parks

5    and that Decedent's neighbor said he might be getting drugs. (Compl. ¶ 17.) Plaintiff Kimberly

6    believes Defendant Shores was biased about Decedent's whereabouts and limited her search to

7    other RV parks rather than taking "reasonable steps" to locate a person with mental health

8    conditions. (Compl. ¶ 18.) Defendant Shores later called Plaintiff Kimberly and stated that

9    Plaintiff Kimberly needed to file a written missing person's report, and that Defendant Shores had

10   been actively searching for Decedent in nearby RV parks. (Compl. ¶ 19.)

11       Between September 15, 2022 and September 23, 2022, Plaintiff David called Defendant

12   Lake County Behavioral Health. (Compl. ¶ 21.) He was told by a receptionist that they had no

13   information about Decedent or his whereabouts. (Compl. ¶ 21.) Around September 13, 2022,

14   however, Defendant Lake County Behavioral Health had received a photo of Decedent from

15   Defendant Skeen. (Compl. ¶¶ 22, 49.) Specifically, Defendant Skeen had investigated an

16   unidentified person walking on a road without shoes, wearing pajamas, who turned out to be

17   Decedent. (Compl. ¶ 22.) Based on their interaction, Defendant Skeen knew Decedent was

18   suffering from mental illness; Defendant Skeen took a photo of Decedent and sent it to Defendant

19   Lake County Behavioral Health but made no effort to hold or take Decedent into custody.

20   (Compl. ¶ 22, 48, 49.) Instead, Defendant Skeen permitted Decedent to leave, making no attempt

21   to stop him or call for assistance. (Compl. ¶¶ 22, 49.)

22       Between September 21 and 28, 2022, Detective Flores from Defendant Clearlake Police

23   Department informed Plaintiff Kimberly that he was the lead investigator, but "only asked for

24   vague general information" about Decedent. (Compl. ¶ 23.) Plaintiff David made multiple calls

25   to Detective Flores and Defendant Shores for updates, but neither answered their phones. (Compl.

26   ¶ 24.) At an unknown point, an unidentified sergeant contacted Plaintiff David and expressed his

27   belief that Decedent was probably in a drug house. (Compl. ¶ 25.) When Plaintiff David

28   explained Decedent was too mentally ill to be in a drug house and that his communication skills

United States District Court
Northern District of California

were poor due to his schizophrenia, the sergeant was unsympathetic.  (Compl. ¶ 25.)

Plaintiff Kimberly also made multiple calls to Detective Flores.  (Compl. ¶ 26.)  When Detective Flores responded, he only asked for dental records, and made no effort to profile Decedent correctly.  (Compl. ¶ 26.)  In another call, Detective Flores told Plaintiff Kimberly that he had other cases he was working on, including a homicide.  (Compl. ¶ 27.)

On September 28, 2022, Defendant Clearlake Police Department posted a missing person poster for Decedent.  (Compl. ¶ 31.)  Between October 2 and 24, 2022, Detective Flores provided no updates, phone calls, or check ins.  (Compl. ¶ 34.)

On October 24, 2022, Decedent's sister received an anonymous tip from Defendant Lake County Behavioral Health that they had information about Decedent's whereabouts.  (Compl. ¶ 35.)  Plaintiff David called Defendant Lake County Behavioral Health, and learned about Defendant Skeen's September 13, 2022 interaction with Decedent.  (Compl. ¶ 36.)  The social worker speaking to Plaintiff David stated that he had turned down the request to assist Decedent because of lack of cell phone service in that area.  (Compl. ¶ 36.)  Plaintiff David called Detective Flores and left a message about this new information.  (Compl. ¶ 37.)  Plaintiff David also contacted Defendant DHP to speak to Defendant Skeen but was told Defendant Skeen was on vacation.  (Compl. ¶ 38.)

Based on this information, Plaintiff Kimberly searched Sulphur Bank, where Decedent was last seen.  (Compl. ¶¶ 39-40.)  Plaintiff Kimberly saw Detective Flores driving around the area, looking for Decedent.  (Compl. ¶ 40.)  As Detectives Flores was only looking through the window of his vehicle while driving the area, Plaintiff Kimberly told him he needed a search and rescue party.  (Compl. ¶ 40.)  Between October 25 and 27, 2022, Plaintiff David also spoke with Detective Flores, stressing the urgency of locating Decedent.  (Compl. ¶ 41.)  Detective Flores responded that Decedent was probably visiting shelters or with friends and appeared unmotivated to find Decedent quickly.  (Compl. ¶ 41.)  While Detective Flores interviewed residents living at the bottom of the Sulphur Bank Drive area, he never requested a search and rescue party.  (Compl. ¶ 43.)

On October 25, 2022, Plaintiffs drove to the lower Sulphur Bank to search for Decedent.

1    (Compl. ¶ 44.)  A resident told them that Decedent had been seen in the area, but the residents had

2    driven him away because they thought he was a squatter.  (Compl. ¶ 44.)

3          On October 29, 2022, Decedent's body was found on the lake at Sulphur Bank.  (Compl. ¶

4    45.)  On November 1, 2022, Plaintiffs were notified of Decedent's death.  (Compl. ¶ 46.)

5          On April 7, 2023, Plaintiffs filed the instant lawsuit, alleging the following claims: (1) 42

6    U.S.C. § 1983 violation of due process and equal protection; (2) violation of Title III of the

7    Americans with Disabilities Act ("ADA"); (3) violation of the Unruh Civil Rights Act as to

8    Defendants Clearlake Police Department, City of Clearlake, Lake County, Lake County

9    Behavioral Health, and CHP; and (4) wrongful death and survival.[1]  (Compl. at 13-18.)

10         On May 22, 2023, Defendant CHP filed a motion to dismiss for lack of jurisdiction, on the

11   ground that Plaintiffs could not state a claim against it.  On June 9, 2023, Plaintiffs filed their

12   opposition.  (Pls.' Opp'n to CHP Mot. to Dismiss, Dkt. No. 14.)  On June 16, 2023, Defendant

13   CHP filed its reply.  (CHP Reply, Dkt. No. 15.)

14         On June 20, 2023, Defendants City of Clearlake and Shores (collectively, "Clearlake

15   Defendants") filed their motion to dismiss.  On September 1, 2023, Plaintiffs filed their

16   opposition.  (Pls.' Opp'n to Clearlake Mot. to Dismiss, Dkt. No. 37.)  On September 15, 2023, the

17   Clearlake Defendants filed their reply.  (Clearlake Reply, Dkt. No. 44.)

18         On June 26, 2023, Defendant Skeen filed his motion to dismiss.  On September 1, 2023,

19   Plaintiffs filed their opposition.  (Pls.' Opp'n to Skeen Mot. to Dismiss, Dkt. No. 40.)  On

20   September 11, 2023, Defendant Skeen filed his reply.  (Skeen Reply, Dkt. No. 42.)

21         On August 15, 2023, Defendants Lake County and Lake County Behavioral Health

22   (collectively, "Lake County Defendants") filed a motion for judgment on the pleadings.  On

23   September 19, 2023, Plaintiffs filed their opposition.  (Pls.' Opp'n to Lake Mot. for Judgment,

24   Dkt. No. 45.)  On September 26, 2023, Defendant Lake County filed its reply.  (Lake Reply, Dkt.

25   No. 46.)

26

27

28   _____

[1] The complaint cover page also lists claims based on negligence and failure to protect a citizen with special needs, but the complaint does not assert such claims.  (*See* Compl. at 1.)

United States District Court
Northern District of California

## II.   LEGAL STANDARD

### A.   Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss based on the failure to state a claim upon which relief may be granted.  A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

In considering such a motion, a court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted) and may dismiss the case or a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro*, 250 F.3d at 732) (internal quotation marks omitted).

A claim is plausible on its face when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted).  In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"Threadbare recitals of the elements of a cause of action" and "conclusory statements" are inadequate.  *Iqbal*, 556 U.S. at 678; *see also Epstein v. Wash. Energy Co*., 83 F.3d 1136, 1140 (9th Cir. 1996) ("[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim.").  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully . . .  When a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (internal citations omitted).

Generally, if the court grants a motion to dismiss, it should grant leave to amend even if no request to amend is made "unless it determines that the pleading could not possibly be cured by

5

1   the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (citations

2   omitted).

3       **B.      Motion for Judgment on the Pleadings**

4           Federal Rule of Civil Procedure 12(c) allows a party to move for judgment on the

5   pleadings after the pleadings are closed but early enough not to delay trial.  "[T]he same standard

6   of review applicable to a Rule 12(b) motion applies to its Rule 12(c) analog," because the motions

7   are "functionally identical." *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir.

8   1989).  Thus, a Rule 12(c) motion may be predicated on either (1) the lack of a cognizable legal

9   theory or (2) insufficient facts to support a cognizable legal claim. *See Balistreri v. Pacifica Police

10  Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  When considering a motion to dismiss under Rule 12(c),

11  the court "must accept all factual allegations in the complaint as true and construe them in the light

12  most favorable to the non-moving party." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).

13          **III.     DISCUSSION**

14      **A.      Request for Judicial Notice**

15           In opposition to Defendant Skeen's motion to dismiss, Plaintiffs request judicial notice of:

16  (1) Chapter 14 of the 2020 CHP Manual, (2) a July 17, 2023 San Francisco Chronicle article

17  regarding Decedent's death, and (3) a November 23, 2023 autopsy report of Decedent.  (Pls.' RJN,

18  Dkt. No. 38-1.)  Defendant Skeen opposes.  (Skeen Opp'n to RJN, Dkt. No. 43.)

19           As an initial matter, Plaintiffs rely on California Evidence Code § 453, but fail to explain

20  why the California Evidence Code would apply in federal court.  (Pls.' RJN at 2.)  Accordingly,

21  the Court relies on the Federal Rules of Evidence.  Federal Rule of Evidence 201 permits a court

22  to take judicial notice of facts that are "not subject to reasonable dispute because it: (1) is

23  generally known within the trial court's jurisdiction; or (2) can be accurately and readily

24  determined from sources whose accuracy cannot reasonably be questioned."

25           The Court GRANTS Plaintiffs' request for judicial notice as to Chapter 14 of the CHP

26  Manual.  This chapter is not reasonably subject to dispute and is a matter of public record

27  available on the CHP's website.  *See Hernandez v. Cnty. of Monterey*, 305 F.R.D. 132, 139 n.2

28  (N.D. Cal. 2015) (taking judicial notice of agency manuals, rules, and policies).

United States District Court
Northern District of California

6

1    The Court DENIES Plaintiffs' request for judicial notice of the SF Chronicle article.

2  Plaintiffs rely on the SF Chronicle article for the facts stated therein.  (*See* Pl.'s Opp'n to Skeen

3  Mot. to Dismiss at 8.)  Courts, however, "do not take judicial notice of newspaper articles for the

4  truth of the contents of the articles."  *Ali v. Intel Corp.*, No. 18-CV-03981-LHK, 2018 U.S. Dist.

5  LEXIS 186696, at *9 (N.D. Cal. Oct. 31, 2018).  "This is because often, the accuracy of

6  information in newspaper articles . . . cannot be readily determined and/or can be reasonably

7  questioned."  *Gerritsen v. Warner Bros. Entm't Inc.*, 112 F. Supp. 3d 1011, 1028 (C.D. Cal. 2015).

8    The Court DENIES Plaintiffs' request for judicial notice of the November 23, 2023

9  autopsy.  It is unclear what basis there is to take judicial notice of what appears to be a private

10  autopsy, nor is it clear what relevance the autopsy has as to the instant motions.  At most,

11  Plaintiffs cite the autopsy to state what the cause of death was, but the cause of death is not at

12  issue in this case.

13    **B.    Claim 1: § 1983 Claim**

14    Plaintiffs bring a § 1983 claim against all Defendants based on violations of due process

15  and equal protection.  (Compl. at 13.)

16      **i.    CHP**

17    Defendant CHP argues that it "is not a 'person' subject to suit under 42 U.S.C. section

18  1983."  (CHP Mot. to Dismiss at 5.)  The Supreme Court has found that "neither a State nor its

19  officials acting in their official capacities are 'persons' under § 1983."  *Will v. Mich. Dep't of State*

20  *Police*, 491 U.S. 58, 71 (1989).  Applying *Will*, courts have found that Defendant CHP, a state

21  agency, "is neither a 'person' within the meaning of § 1983, nor amenable to suit under *Monell*."

22  *Gardner v. Cal. Highway Patrol*, No. 2:14-cv-02730 JAM CMK, 2015 U.S. Dist. LEXIS 94242,

23  at *10 (E.D. Cal. July 20, 2015); *see also Collins v. California*, No. CV 15-0710-R-JC, 2015 U.S.

24  Dist. LEXIS 199774, at *7 (C.D. Cal. Apr. 8, 2015) ("Plaintiff cannot sue the State of California

25  or the CHP . . . as a *Monell* claim cannot be brought against the state agency itself.").

26    Plaintiffs cite no authority to the contrary.  Instead, Plaintiffs appear to concede that

27  Defendant CHP is not a "person" under § 1983, but simply asserts that "Agent Skeen is a 'person'

28  who has been named."  (Pls.' Opp'n to CHP Mot. to Dismiss at 6.)  Plaintiffs provide no authority

United States District Court
Northern District of California

7

1 | or explanation for how this means Defendant CHP may be held liable under § 1983. Indeed, the

2 | Supreme Court has found that to the extent a § 1983 claim is brought against a state official in his

3 | or her official capacity, such a suit "is no different from a suit against the State itself" and

4 | therefore not viable. *Will*, 491 U.S. at 71. Further, to the extent Plaintiffs are suggesting that

5 | Defendant CHP is liable as Defendant Skeen's employer, "[t]here is no respondeat superior

6 | liability under section 1983." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *see also Monell*

7 | *v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) ("a municipality cannot be held liable *solely*

8 | because it employs a tortfeasor -- or, in other words, a municipality cannot be held liable under §

9 | 1983 on a *respondeat superior* theory").

10 | Accordingly, Plaintiffs cannot state a claim against Defendant CHP under § 1983, and thus

11 | § 1983 cannot serve as a basis for federal jurisdiction as to Defendant CHP.

12 | ## ii. Clearlake Defendants

13 | ### a. Due Process Violation

14 | The Clearlake Defendants argue that Plaintiffs' due process violation fails because to the

15 | extent it is based on the Clearlake Defendants' failure to adequately investigate and locate

16 | Decedent, "the Due Process Clauses generally confer no affirmative right to governmental aid,

17 | even where such aid may be necessary to secure life, liberty, or property interests of which the

18 | government itself may not deprive the individual." *Deshaney v. Winnebago Cty. Dep't of Soc.*

19 | *Servs.*, 489 U.S. 189, 196 (1989). In other words, "[t]he police have no affirmative obligation to

20 | investigate a crime in a particular way or to protect one citizen from another even when one

21 | citizen deprives the other of liberty o[r] property." *Gini v. Las Vegas Metro. Police Dep't*, 40 F.3d

22 | 1041, 1045 (9th Cir. 1994).

23 | Plaintiffs provide no contrary authority, nor do they argue that one of the limited

24 | exceptions creating an affirmative right to governmental aid -- *e.g.*, the special relationship

25 | exception or state-created danger exception -- apply in this case. Indeed, Plaintiffs do not respond

26 | to the Clearlake Defendants' argument regarding the due process violation at all, instead focusing

27 | solely on the equal protection claim. (*See* Pls.' Opp'n to Clearlake Mot. to Dismiss at 8-11.)

28 | Accordingly, Plaintiffs have waived any argument as to the due process claim, and the due process

8

1   claim against the Clearlake Defendants is dismissed with prejudice.

2                    b.   Equal Protection Claim

3          As to the equal protection claim, the Clearlake Defendants argue that Plaintiffs have failed

4   to state sufficient facts in support.  (Clearlake Mot. to Dismiss at 9.)  To state an equal protection

5   claim, "a plaintiff must show that the defendants acted with an intent or purpose to discriminate

6   against the plaintiff based upon membership in a protected class."  *Barren v. Harrington*, 152 F.3d

7   1193, 1194 (9th Cir. 1998).

8          As an initial matter, the Clearlake Defendants correctly point out that neither Plaintiff

9   suggests they belong to a protected class or that they were treated differently because of their

10  membership in a protected class.  (Clearlake Mot. to Dismiss at 10.)  Plaintiffs do not appear to

11  dispute this point, and instead argue that they "can present a viable claim on behalf of

12  [Decedent]'s estate showing that [Decedent] was denied Equal Protection."  (Pls.' Opp'n to

13  Clearlake Mot. to Dismiss at 11.)  Thus, the Court construes the equal protection claim as being

14  limited solely to Decedent.

15         The parties dispute whether Plaintiffs have identified any facts suggesting Defendant

16  Shores failed to take any particular actions because of Decedent's mental condition.  (Clearlake

17  Mot. to Dismiss at 9; Pls.' Opp'n to Clearlake Mot. to Dismiss at 10.)  There is no dispute that

18  Plaintiffs have alleged that Defendant Shores knew Decedent was mentally disabled.  (*See* Compl.

19  ¶ 16.)  This, however, is insufficient to demonstrate that Defendant Shores took (or failed to take)

20  actions *because* she intended to discriminate against Decedent based on his mental condition.  *See*

21  *Jones v. City of Oakland*, No. 19-cv-00789-HSG, 2019 U.S. Dist. LEXIS 125205, at *8 (N.D. Cal.

22  July 26, 2019) (dismissing equal protection claim where the plaintiffs did not suggest that the

23  officer more thoroughly investigated similar crimes that were not racially motivated, or that the

24  officer "took any action or chose not to take any action due to Plaintiffs' race").  At most,

25  Plaintiffs allege that Plaintiff Kimberly "suspected that [Defendant Shores] was biased about

26  [Decedent's] whereabouts, only limiting her search to other parks and suspecting he was visiting

27  drug houses." (Compl. ¶ 18.)  As the Clearlake Defendants point out, Plaintiffs do not explain the

28  basis of Plaintiff Kimberly's suspicion.  (Clearlake Mot. to Dismiss at 9.)  Moreover, it is not even

United States District Court
Northern District of California

9

clear that Plaintiff Kimberly believed Defendant Shores was biased about Decedent *because* of his mental condition.  Indeed, Defendant Shores's allegedly limited search was made after Plaintiff Kimberly mentioned the possibility that Decedent could be visiting other parks and that his neighbor said he might be getting drugs.  (Compl. ¶ 17.)

Plaintiffs, in turn, assert that the Clearlake Defendants had "a regular custom of discriminating against persons with mental illness by disregarding them as drug addicts."  (Pls.' Opp'n to Clearlake Mot. to Dismiss at 10.)  Instead, the Clearlake Defendants failed to follow various procedures for investigating missing persons that they took in other investigations.  (*Id.* at 10-11.)  Plaintiffs further assert that Defendant Shores recklessly and carelessly reported misinformation to other officers, namely that Decedent was a drug addict.  (*Id.* at 11.)  Plaintiffs, however, do not point to any such facts *in the complaint*.  Nor is it clear that even if Defendant Shores wrongfully reported that Decedent was a drug addict, she did so because of bias based on Decedent's mental condition.  Thus, Plaintiffs have failed to state an equal protection claim as to Decedent, necessitating dismissal.

The next question is whether Plaintiffs should be given leave to amend.  With respect to Defendant Shores, the Clearlake Defendants have argued that she is entitled to qualified immunity.  "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation omitted).  "In evaluating a grant of qualified immunity, a court considers whether (1) the state actor's conduct violated a constitutional right and (2) the right was clearly established at the time of the alleged misconduct."  *Gordon v. Cnty. of Orange*, 6 F.4th 961, 967-68 (9th Cir. 2021).  Importantly, "[f]or a constitutional right to be clearly established, a court must define the right at issue with specificity and not at a high level of generality."  *Id.* at 968 (internal quotation omitted).  Thus, "qualified immunity is not meant to be analyzed in terms of a general constitutional guarantee, but rather the application of general constitutional principles in a particular context."  *Id.* at 969 (internal quotation omitted).  The burden is on the plaintiff to "identify a case that put[s the defendant] on notice that his *specific* conduct was unlawful."  *Rivas-*

United States District Court
Northern District of California

10

1    *Villegas v. Cortesluna*, 142 S. Ct. 4, 8 (2021) (emphasis added).

2          Plaintiffs have not done so.  Even if Plaintiffs had established an equal protection violation

3    based on Defendant Shores not taking certain actions required by statute or falsely reporting to

4    other officers that Decedent was a drug addict, Plaintiffs cite **no** case showing that such actions

5    would constitute a constitutional violation.  Instead, Plaintiffs cite various cases explaining how

6    qualified immunity works, none of which have facts like those in this case.  *See Siegert v. Gilley*,

7    500 U.S. 226, 232 (1991) (alleging Fifth Amendment violation based on the loss of employment);

8    *Harlow v. Fitzgerald*, 457 U.S. 800, 802-03 (1982) (concerning a conspiracy by presidential aides

9    and advisors to affect the plaintiff's wrongful discharge); *Elder v. Holloway*, 510 U.S. 510, 512

10   (1994) (alleging a warrantless arrest).  At the hearing, Plaintiffs acknowledged they had no such

11   case law.  Instead, Plaintiffs pointed to "rules and regulations," but cited no authority that this is

12   sufficient to establish a constitutional violation or provide the notice required to defeat qualified

13   immunity.  In short, Plaintiffs have failed to identify any factually similar case authority that

14   would put Defendant Shores on notice that her specific actions or failure to act violated

15   Decedent's equal protection rights.  *See Rivas-Villegas*, 142 S. Ct. at 8 (finding that qualified

16   immunity applied where the plaintiff failed to identify any binding authority "that addresses facts

17   like the ones at issue here").  Thus, qualified immunity applies, and the equal protection claim

18   against Defendant Shores is dismissed with prejudice.

19         As to Defendant City of Clearlake, Plaintiffs argue that they have alleged that Defendant

20   City of Clearlake maintained a widespread practice and custom discriminating against persons

21   with mental illness, as demonstrated by Defendant Shores and her peers viewing mental illness in

22   the same light as drug addiction.  (Pls.' Opp'n to Clearlake Mot. to Dismiss at 12.)  Plaintiffs do

23   not cite where these allegations are in the complaint, and the Court has not been able to identify

24   any such allegations.  Plaintiffs also do not explain or provide any case authority for how this

25   establishes *municipal* liability or identify instances other than Decedent's specific case to

26   demonstrate a longstanding practice or custom.  The Ninth Circuit has been clear that "[l]iability

27   for improper custom may not be predicated on isolated or sporadic incidents; it must be founded

28   upon practices of sufficient duration, frequency and consistency that the conduct has become a

United States District Court
Northern District of California

11

1  traditional method of carrying out policy." *Gordon*, 6 F.4th at 974 (finding that the *Monell* claim

2  failed where the plaintiff failed to identify any other instance of similar conduct); *see also City of*

3  *Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985) ("Proof of a single incident of unconstitutional

4  activity is not sufficient to impose liability under *Monell*").  Additionally, while Plaintiffs briefly

5  refer to the failure to train, they cite no facts in the complaint and provide no argument for how

6  this applies in the instant case.  (Pls.' Opp'n to Clearlake Mot. to Dismiss at 12.)

7           That said, Plaintiffs have suggested that they could amend the complaint to allege that

8  officers took mandatory steps such as releasing a BOLO (Be on the Lookout) bulletin and

9  coordinating with law enforcement in other missing person investigations, in contrast to those

10  involving missing persons with mental illness.  (Pls.' Opp'n to Clearlake Mot. to Dismiss at 10-

11  11.)  Moreover, given that this is the first complaint, the Court cannot definitively find that

12  amendment would be futile.  Accordingly, the equal protection claim against Defendant City of

13  Clearlake is dismissed without prejudice; Plaintiffs will be given leave to amend the complaint to

14  allege a *Monell* claim as to the equal protection claim only.  In so amending, Plaintiffs must allege

15  *specific* facts demonstrating that there was a "policy, custom, or practice that was the 'moving

16  force' behind the constitutional violation[.]" Gravelet-*Blondin v. Shelton*, 728 F.3d 1086, 1096

17  (9th Cir. 2013).  Plaintiffs are also reminded of their Rule 11 obligations in amending, including

18  that any "factual contentions have evidentiary support or, if specifically so identified, will likely

19  have evidentiary support after a reasonable opportunity for further investigation or discovery[.]"

20  Fed. R. Civ. P. 11(b)(3).

21           **iii.   Defendant Skeen**

22                 a.   Due Process Violation

23           Much like the Clearlake Defendants, Defendant Skeen argues that there is no due process

24  claim because Defendant Skeen had no duty to protect Decedent.  (Skeen Mot. to Dismiss at 4.)

25  Plaintiffs respond that Defendant Skeen owed a special relationship with Decedent.  (Pls.' Opp'n

26  to Skeen Mot. to Dismiss at 9.)  In support, Plaintiffs rely on California state court cases

27  concerning negligence law.  (*Id.* at 9-12.)  Plaintiffs, however, cite no authority that such

28  California negligence cases set the standard for establishing a special relationship sufficient to

United States District Court
Northern District of California

impose liability for the violation of a constitutional right under § 1983.  Rather, the Supreme Court has found a special relationship in § 1983 due process cases in very limited circumstances, namely "when the State takes a person into its custody and holds him there against his will[.]" *Deshaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 200, 109 S. Ct. 998, 1005 (1989).  "Under this exception, the state's constitutional duty arises not from the State's knowledge of the individual's predicament or from its expression of intent to help him, but from the limitation which the State has imposed on his freedom."  *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 972 (9th Cir. 2011).  Thus, "[t]he special-relationship exception does not apply when a state fails to protect a person who is not in custody."  *Id.*

Here, Plaintiffs do not allege that Defendant Skeen had Decedent in custody.  Rather, Plaintiffs argue the opposite: Plaintiffs contend that Defendant Skeen *failed* to take Decedent into custody.  (*See* Pls.' Opp'n to Skeen Mot. to Dismiss at 14.)  This is insufficient to create a special relationship for purposes of § 1983, even if Plaintiffs could establish liability under a California negligence law.

At the hearing, however, Plaintiffs for the first time raised the new theory that Defendant Skeen had Decedent in custody when he stopped Decedent from walking down the road.  Plaintiffs further suggest that this put Decedent in a more dangerous circumstance because Decedent then left by jumping over the ravine, rather than continuing down the road.  The Court notes that this new theory is not alleged in the complaint or Plaintiffs' filings.  Indeed, it is arguably contradictory to the complaint, which complains that the road included non-visible and dangerous twists, such that allowing Decedent to continue walking on it "presented a serious risk of injury and/or death to himself and oncoming traffic."  (Compl. ¶ 48.)  Likewise, the complaint complains that Defendant Skeen "did nothing to detain" Decedent.  (Compl. ¶ 49.)  In short, there is no apparent basis in the complaint for Plaintiffs' new theory and certainly insufficient notice to Defendant Skeen as to the theory of liability.

Given that this is the first complaint and motion to dismiss, however, the Court -- reluctantly -- will allow Plaintiffs to amend the complaint to allege this new theory.  In so doing, Plaintiffs must allege sufficient facts, and be prepared to cite on-point case authority which

13

demonstrates that Defendant Skeen legally had Decedent in custody, such that a special relationship or duty was created.  Thus, the due process claim against Defendant Skeen is dismissed with leave to amend.

### b.  Equal Protection Claim

Defendant Skeen argues that the equal protection claim must be dismissed because there are no factual allegations that Defendant Skeen intended to discriminate against Decedent based on his protected class.  (Skeen Mot. to Dismiss at 5-6.)  In response, Plaintiffs' entire argument is: "Moving Party is incorrect in its assertion.  However, if the Court rules in favor of Moving Party on this issue, it should grant Plaintiff leave to amend."  (Pls.' Opp'n to Skeen Mot. to Dismiss at 14.)  In short, Plaintiffs point to no facts demonstrating an intent to discriminate, nor do Plaintiffs cite to any facts that they could add.  For this reason alone, dismissal with prejudice is arguably warranted.

In any case, the Court finds that qualified immunity applies.  Defendant Skeen contends there is no authority in which an officer acting under similar circumstances as Defendant Skeen was found to have violated a plaintiff's equal protection rights.  Plaintiffs respond by relying on an excessive force and unreasonable search and seizure case, in which force was used against a mentally unstable individual.  (Pls.' Opp'n to Skeen Mot. to Dismiss at 14-15 (citing *City & Cty. of S.F. v. Sheehan*, 575 U.S. 600, 612-14 (2015).)  There is no suggestion that Defendant Skeen used *any* force against Decedent, and Plaintiffs admitted at the hearing that they have no case with similar facts that would put Defendant Skeen on notice that their theory of liability would give rise to a constitutional violation.  Accordingly, the Court finds that qualified immunity applies, and the equal protection claim against Defendant Skeen is dismissed with prejudice.

### iv.   Lake County Defendants

#### a.  Due Process Violation

In their motion to dismiss, the Lake County Defendants argue that Plaintiffs have failed to allege a due process claim based on an alleged violation of the ADA or by failing to adequately

investigate Decedent's disappearance.[2]  (Lake Mot. for Judgment at 13-14.)  In response, Plaintiffs for the first time assert in their opposition that the due process claim is based on Defendant Lake County Behavioral Health denying Plaintiffs the "substantive right of access" to Decedent's file, as Decedent received services from Defendant Lake County Behavioral Health and Plaintiffs were authorized to receive information about Decedent to administer care.  (Pls.' Opp'n to Lake Mot. for Judgment at 6-7.)  Thus, Plaintiffs suggest the Lake County Defendants "denied this right without having a formal hearing or process supporting the denial." (*Id.* at 7.)  A review of the complaint fails to give notice that this is the basis of Plaintiffs' due process claim; instead, the complaint focuses on the prohibition of discrimination against persons with disabilities.  (*See* Compl. ¶¶ 56-66.)  Thus, Plaintiffs have failed to adequately put the Lake County Defendants on notice of this basis for the due process claim.

Additionally, Plaintiffs assert a due process claim based on Decedent's denial of mental health services to Decedent based on their refusal to search for Decedent, even though Decedent was entitled to receive state-funded services for his mental illness.  (Pls.' Opp'n to Lake Mot. for Judgment at 7.)  Again, it is unclear from the complaint that this is the basis for Decedent's due process claim.  Plaintiffs also cite no authority that this is sufficient to support a due process violation, and it is not the Court's obligation to search for such authority.

Accordingly, the due process claim against the Lake County Defendants is dismissed.  The Court will, however, permit Plaintiffs leave to amend the due process claim to make clear the specific actions that are the basis for this claim.  Should the Lake County Defendants file a future motion to dismiss or motion for judgment on the pleadings, however, Plaintiffs must identify case law that demonstrates these are viable bases for a due process claim.

    b. Equal Protection Claim

---

[2] The Lake County Defendants also suggest they are entitled to qualified immunity but cite no authority applying qualified immunity to municipalities (as opposed to individuals).  (Lake Mot. for Judgment at 23-24.)   The Supreme Court, however, has "reject[ed] a construction of § 1983 that would accord municipalities a qualified immunity for their good-faith constitutional violations[.]" Owen *v. Independence*, 445 U.S. 622, 650 (1980); *see also Allen v. Santa Clara Cnty. Corr. Peace Officers Ass'n*, 38 F.4th 68, 73 (9th Cir. 2022) (explaining that "*Owen* closed the door on municipal qualified immunity").

United States District Court
Northern District of California

United States District Court
Northern District of California

Next, the Lake County Defendants argue that Plaintiffs fail to allege an equal protection claim because there are no allegations that Defendants acted with intent to discriminate against Decedent based on his protected class.  (Lake Mot. for Judgment at 14.)  In response, Plaintiffs admit that they have no such allegations and no "adequate information regarding whether [Defendant Lake County Behavioral Health] treated other participants in this manner."  (Pls.' Opp'n to Lake Mot. for Judgment at 7.)  Instead, Plaintiffs suggest that the motion for judgment on the pleadings should be stayed so that Plaintiffs can "complete discovery in the form of witness depositions," on the ground that "the evidence will likely support Plaintiff's claims."  (*Id.*)  This is not how pleadings work.  Plaintiffs have an obligation to plead *sufficient facts* at the pleading stage before proceedings to depositions; "conclusory allegations without more are insufficient to defeat a [Rule 12(c)] motion to dismiss for failure to state a claim."  *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir. 1988).  Plaintiffs cite no authority that the Court can simply stay a motion for judgment on the pleadings to allow plaintiffs to obtain discovery because they are unable to plead sufficient facts in the complaint.  As Plaintiffs have admitted that they lack facts, the equal protection claim against the Lake County Defendants is dismissed.  The Court, however, will allow Plaintiffs to amend to allege facts demonstrating that Defendant Lake County Behavioral Health acted "because [Decedent] had a severe mental health condition the agency did not want to manage."  (Pls.' Opp'n to Lake Mot. for Judgment at 7.)  Again, in so amending, Plaintiffs are reminded of their Rule 11 obligations.

### C.    Claim 2: ADA Claim

Second, Plaintiffs bring a claim for violation of Title III of the ADA.  Title III of the ADA, however, "relates to public accommodations and services operated by **private** entities."  *Enyart v. Nat'l Conference of Bar Exam'rs, Inc., Inc.*, 630 F.3d 1153, 1160 (9th Cir. 2011) (emphasis added).  The ADA defines a "private entity" as "any entity other than a public entity," while a "public entity" is defined as "any State or local government [or] any department, agency, . . . or other instrumentality of a State or States or local government."  42 U.S.C. §§ 12131(1), 12181(6).

Defendants argue that Plaintiffs' Title III claims fail as a matter of law because they are not "private entities" that operate public accommodations and services.  (*See* CHP Mot. to Dismiss at

16

United States District Court
Northern District of California

1  4; Clearlake Mot. to Dismiss at 17; Skeen Mot. to Dismiss at 8; Lake Mot. for Judgment at 15.)

2  Defendants Clearlake Police Department, City of Clearlake, Lake County, Lake County

3  Behavioral Health, and California Highway Patrol are government entities.  Defendants Shores

4  and Skeen are private individuals who work for government entities.

5       Significantly, Plaintiffs cite **no** authority that suggests Title III of the ADA applies to such

6  government entities or their employees.  Instead, in response to Defendant CHP's motion to

7  dismiss, Plaintiffs rely on Title II of the ADA and the Rehabilitation Act; Plaintiff, however, is not

8  bringing claims against Defendant CHP under either Title II or the Rehabilitation Act.  (Pls.'

9  Opp'n to CHP Mot. to Dismiss at 4.)  Similarly, Plaintiffs argue they can bring an ADA claim

10  against Defendant Skeen under 42 U.S.C. § 12132, but this pertains to *Title II*, not Title III.  (Pls.'

11  Opp'n to Skeen Mot. to Dismiss at 10.)  Plaintiffs do not respond to the Clearlake Defendants'

12  motion to dismiss the Title III claim at all.

13       As to the Lake County Defendants' motion for judgment, Plaintiffs for the first time

14  concede that they incorrectly cited Title III of the ADA.  (Pls.' Opp'n to Lake Mot. for Judgment

15  at 9.)  In response, the Lake County Defendants argue that Plaintiffs cannot state a claim for relief

16  because they cannot demonstrate discrimination by reason of his disability.  (Lake Reply at 4.)

17  Again, as this is the first complaint, it is premature to find that Plaintiffs cannot adequately allege

18  discrimination by reason of disability.  Accordingly, Plaintiffs' Title III claim is dismissed with

19  prejudice, but the Court will allow Plaintiffs to plead a Title II claim except against Defendants

20  Skeen and Shores.  In so pleading, Plaintiffs must plead specific facts demonstrating

21  discrimination by reason of disability as to each Defendant.

22       As to Defendants Skeen and Shores, courts have found that as a general matter, individuals

23  "cannot be liable as a 'public entity' for any alleged violations of Title II" in their individual

24  capacity.  *Constantin v. Navarrete*, No. 22-cv-07075-VKD, 2023 U.S. Dist. LEXIS 156626, at *17

25  (N.D. Cal. Sep. 5, 2023); *Roberts v. Cal. Dep't of Corr. & Rehab.*, No. EDCV 16-1929 CJC(JC),

26  2017 U.S. Dist. LEXIS 135459, at *25 (C.D. Cal. Aug. 22, 2017) (collecting cases).  While a

27  plaintiff may bring a Title II claim against a state official in their official capacity, this is permitted

28  only under very limited circumstances, namely "where the underlying authorization upon which

17

the named official acts is asserted to be illegal, the alleged violation of federal law is ongoing, and the violation would be ended by affording the relief sought."  *Espino v. Regents of the Univ. of Cal.*, No. 2:22-cv-05880-SPG-JPR, 2023 U.S. Dist. LEXIS 58626, at *34-35 (C.D. Cal. Mar. 31, 2023) (citing *Papasan v. Allain*, 478 U.S. 265, 277-78).  Moreover, the state official "'must have some connection with the enforcement of the act.'"  *Id.* (quoting *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 943 (9th Cir. 2013).  None of these circumstances are present here, where Plaintiffs are challenging past actions unrelated to the enforcement of a challenged law.  Thus, there is no basis for bringing a Title II claim against Defendants Skeen or Shores.

### D.    Claim 3: Unruh Claim

Third, Plaintiffs bring a claim under the Unruh Act against Defendants Clearlake Police Department, City of Clearlake, Lake County, Lake County Behavioral Health, and CHP.  (Compl. at 16.)  Defendants argue this claim must be dismissed because the Unruh Act only applies to business establishments, not governmental entities.  (CHP Mot. to Dismiss at 5-6; Clearlake Mot. to Dismiss at 18; Lake Mot. for Judgment at 16.)

"The purpose and legislative history of the Unruh Civil Rights Act . . . make clear that the focus of the Act is the conduct of *private business establishments*."  *Brennon B. v. Superior Court*, 13 Cal. 5th 662, 675 (2022).  In contrast, "the actions of state actors were not the focus of the . . . Unruh Civil Rights Act."  *Id.*  In *Brennon B.*, the California Supreme Court found that school districts are not business establishments for the purposes of the Unruh Act when educating students, explaining that "[w]hile the phrase 'all business establishments of every kind whatsoever' must be interpreted as broadly as reasonably possible, its scope remains limited to entities acting as private business establishments."  *Id.* at 678.  Thus, while attributes such as "performing business functions, protecting economic value, operating as the functional equivalent of a commercial enterprise, etc." could demonstrate a public entity was working as a business establishment, a public school "acting in their core educational capacity . . . do[es] not perform 'customary business functions,' nor is their *overall function* to protect and enhance economic value."  *Id.* at 681 (cleaned up).

Here, there is no suggestion Defendants were engaged in business functions, such as "conducting business transactions with the public" or "enhance[ing] economic value" of a commercial enterprise, when they failed to search for Decedent or take him into custody. *Compare with Frazier v. City of Fresno*, No. 1:20-cv-01069-ADA-SAB, 2023 U.S. Dist. LEXIS 107702, at *221 (E.D. Cal. June 21, 2023) (finding that the city was not engaged in business functions based on its lease of a portion of a park). Rather, the instant case concerns Defendants' traditional government functions, namely police work and/or assisting in the search of a missing person. *See White v. City & Cty. of W. Sacramento*, No. 2:20-cv-02383-MCE-AC, 2021 U.S. Dist. LEXIS 169427, at *11 (E.D. Cal. Sep. 7, 2021) (finding the Unruh Act did not apply to police departments); *Sandoval v. City of Nat'l City*, No. 22CV1657-GPC(AGS), 2023 U.S. Dist. LEXIS 17268, at *26 (S.D. Cal. Feb. 1, 2023) (finding no authority where the Unruh Act applied to police departments and no explanation of how the police were engaged in businesslike activity during an incident where the police allegedly used a police dog and shot the decedent rather than fully assessing and de-escalating the situation); *Raiser v. City of Murrieta*, No. EDCV 19-183-DSF (KK), 2021 U.S. Dist. LEXIS 176795, at *22 (C.D. Cal. June 7, 2021) (finding that the plaintiff failed to explain how the police officer was engaged in commercial activity when he detained the plaintiff).

Plaintiffs cite **no** authority that the type of actions at issue in this case have been found to be business functions subject to the Unruh Act and confirmed at the hearing that they have no such authority. Plaintiffs also provide no analysis of why the actions at issue are akin to business functions. Instead, in opposition to Defendant CHP's motion to dismiss, Plaintiffs argue that *Brennon B.* is limited to school districts; this, however, ignores the general reasoning of *Brennon B.* and its distinction between traditional government functions and business functions. (Pl.'s Opp'n to CHP Mot. to Dismiss at 6.) In opposition to the Clearlake Defendants' motion to dismiss, Plaintiff cites to non-binding cases that precede *Brennon B. See Nicole M. v. Martinez Unified Sch. Dist.*, 964 F. Supp. 1369, 1388 (N.D. Cal. 1997) (finding that a school district was a business establishment without considering whether it was performing a government or business function); *Burgess v. Alameda Hous. Auth.*, 98 F. App'x 603, 607 (9th Cir. 2004) (providing no

United States District Court
Northern District of California

United States District Court
Northern District of California

1   analysis of whether the government entity was a business establishment or engaged in business

2   functions).  As to the Lake County Defendants' motion, Plaintiffs argue that because they have

3   alleged discrimination, "the fact that Defendant is a public entity does not preclude it from being

4   deemed a business establishment under Unruh."  (Pls.' Opp'n to Lake Mot. for Judgment at 9.)

5   Plaintiffs cite no authority that allegations of discrimination automatically make a public entity a

6   business establishment, and this is contrary to the legal authority discussed above.

7        Accordingly, the Unruh Act claim is dismissed with prejudice.

8        **E.     Claim 4: Wrongful Death and Survivorship**

9        Finally, Plaintiffs bring a "Wrongful Death/Survival" claim against Defendants.  It is

10  entirely unclear from the complaint if this is a negligence claim, or an acknowledgment that

11  Decedent's claims are being enforced by his personal representatives or successor in interest.  *See*

12  *Quoiroz v. Seventh Ave. Ctr.*, 140 Cal. App. 4th 1256, 1264 (2006).  Thus, Defendant CHP does

13  not discuss the claim, the Clearlake Defendants and Defendant Skeen[3] equate it to a negligence

14  claim, and the Lake County Defendants treat it as dependent on the viability of the prior claims.

15  (*See* Clearlake Mot. to Dismiss at 18-21; Skeen Mot. to Dismiss at 8-9; Lake Mot. for Judgment at

16  20-21.)  Plaintiffs, in turn, do not respond to any of the arguments raised by these Defendants or

17  otherwise suggest that this claim is meant to be a negligence claim.  Rather, as Plaintiffs explained

18  at the hearing, it is an action for the harm suffered by Decedent.  In any case, because Plaintiffs

19  have failed to adequately allege any of their other claims, this claim must also be dismissed.

20       **F.     Additional Procedural Matters**

21       First, the Clearlake Defendants argue that Plaintiffs' request for declaratory and injunctive

22  relief is improper, as Plaintiffs have not alleged any facts suggesting that they have standing to

23  seek equitable relief, that they are likely to suffer future harm, or that remedies at law are

24  inadequate.  (Clearlake Mot. to Dismiss at 15-16.)  Plaintiffs do not respond.  This relief is

25  dismissed with prejudice as to the Clearlake Defendants.

26

27  _____

    [3] Defendant Skeen argues that he is immune from a negligence claim under California

28  Government Code §§ 855.6 and 856; as there is no suggestion Plaintiffs are attempting to bring a
    negligence claim, the Court does not decide this issue.  (Skeen Mot. to Dismiss at 11-12.)

United States District Court
Northern District of California

1    Second, the Lake County Defendants argue that Plaintiffs' request for punitive damages is

2    improper because it fails to allege sufficient facts and because it relies upon 18 U.S.C. § 1964,

3    which identifies civil remedies under RICO.  (Lake Mot. for Judgment at 22.)  Whether Plaintiffs

4    can never adequately allege conduct giving rise to punitive damages is premature, given that the

5    Court is giving Plaintiffs leave to amend.  To the extent that Plaintiffs are relying on § 1964,

6    however, Plaintiffs have not alleged a RICO claim, nor do they explain in their opposition why §

7    1964 would apply in this case.  Accordingly, any relief sought under § 1964 is dismissed with

8    prejudice as to the Lake County Defendants.

9                                    **IV.    CONCLUSION**

10    For the reasons stated above, the Court rules as follows:

11    Defendant CHP's motion to dismiss is GRANTED.  The § 1983, Title III, and Unruh Act

12    claims are dismissed **with** prejudice.  Plaintiffs may amend the complaint to allege a Title II claim

13    against Defendant CHP, as well as any related wrongful death and survivorship claim (if any).

14    The Clearlake Defendants' motion to dismiss is GRANTED.  All claims against Defendant

15    Shores are dismissed **with** prejudice.  The § 1983 due process violation, Title III, and Unruh Act

16    claims against Defendant City of Clearlake are dismissed **with** prejudice.  Plaintiffs' request for

17    declaratory and injunctive relief against the Clearlake Defendants is dismissed **with** prejudice.

18    Plaintiffs may amend the complaint to allege a § 1983 equal protection claim and Title II claim, as

19    well as any related wrongful death and survivorship claim against Defendant City of Clearlake.

20    Defendant Skeen's motion to dismiss is GRANTED; the § 1983 equal protection and ADA

21    claims are dismissed **with** prejudice.  Plaintiffs may amend the complaint to allege a § 1983 due

22    process claim, as well as any related wrongful death and survivorship claim against Defendant

23    Skeen.

24    The Lake County Defendants' motion for judgment on the pleadings is GRANTED.  The

25    Title III, Unruh Act claims, and § 1964 penalties are dismissed **with** prejudice.  Plaintiffs may

26    amend the complaint to allege the specific bases for a § 1983 due process and equal protection

27    claim, as well as a Title II claim and any related wrongful death and survivorship claim against the

28    Lake County Defendants.

1    Plaintiffs shall file their amended complaint within **21 days** of the date of this order.

2  Except as specified above, no new claims may be added.

3    IT IS SO ORDERED.

4  Dated: November 6, 2023

5  _____
   KANDIS A. WESTMORE

6  United States Magistrate Judge

United States District Court
Northern District of California